## Gladdish v. Southeastern Greyhound Lines.

March 5, 1943.

Walter Robinson for appellant.

R. W. Keenon and White & Clark for appellee.

OPINION OF THE COURT BY CHIEF JUSTICE FULTON—
Reversing.

The appellant seeks to reverse a judgment entered on a directed verdict for appellee at the conclusion of appellant's evidence in an action for damages for personal injuries inflicted on appellant in an assault by appellee's bus driver.

A preliminary question to be disposed of is appellee's motion to strike the bill of exceptions and bill of evidence. The motion is to strike the bill of exceptions because it was not approved by the judge and to strike the bill of evidence because it was not filed as a part of the bill of exceptions. We find, however, that although the clerk in copying the bill of exceptions into the record failed to copy the signature of the judge approving the bill nevertheless the order filing the bill of exceptions shows that it was examined, approved and signed by the court. The mere failure of the clerk to copy the signature of the judge at the end of the bill is not sufficient to warrant a dismissal in these circumstances. And, while the bill of evidence is not in express terms made a part of the bill of exceptions, nevertheless it is stated in the latter that all the proceedings with reference to the evidence appear in the bill of evidence. Further, the bill of exceptions and bill of evidence were filed at the same time and by the same order and, although by this order only the bill of exceptions was made a part of the record, it is apparent that the court treated both the bill of evidence and the bill of exceptions as a part of the record. In these circumstances we think the motion to strike the bill of evidence should also be overruled. It may be added that even if the bill of evidence were stricken certain evidence set out in the bill of exceptions would probably be sufficient to sustain our conclusion that the case should have been submitted to the jury.

Appellant's evidence, which must be taken as true in determining the propriety of the trial court's action in directing the verdict, discloses the following facts.

Appellee is a common carrier. Appellant became a passenger on appellee's bus running from Pembroke to Hopkinsville. During the course of travel appellant complained to the bus driver that the bus was being driven so rapidly over rough places as to cause him much pain on account of a physical condition with which he was afflicted. This aroused resentment on the part of the driver. When appellant alighted from the bus at Hopkinsville, along with other passengers, the driver said to him, "You stand over there, I want to see you." Appellant protested, saying he was in a hurry and had to go. The driver then said, "I said for you to stand over there." Appellant again protested and the driver said, "Stand there by that post." Appellant replied, "I am not taking orders from you" and proceeded across the street. The driver followed him to the middle of the street and further argument occurred during the course of which the driver cursed and abused appellant. The argument continued until appellant, followed by the driver, had crossed the street. The driver then struck appellant several times with his first, knocking him down. Police officers then interfered and ended the controversy.

The briefs are directed mainly to the question whether the bus driver was acting within the scope of his employment at the time of the assault. Certain general rules stated in Newberry v. Judd, 259 Ky. 309, 82 S. W. (2d) 359, are relied on by both parties and appellee also relies on Southeastern Greyhound Lines v. Harden's Adm'x, 281 Ky. 345, 136 S. W. (2d) 42, in which a licensee was assaulted by a carrier's servant on its premises. But cases dealing with injuries to third persons by servants employed in the ordinary master and servant relationship are not controlling here nor are cases dealing with injuries to mere licensees on a carrier's premises.

Ordinarily a master is liable to a third person for injuries inflicted by a servant only when the servant is acting within the scope of his employment but in the case of certain voluntary relationships entered into between a master and another liability may be imposed upon the master in favor of such other on account of wrongs inflicted by a servant even though the servant may have been acting for his own purposes and with no intent to benefit the master—it is immaterial that the servant may have been acting beyond the scope of his

employment. Such a voluntary relationship is that of carrier and passenger. It is in the light of that relationship that the question must be determined.

It is the rule in this state, and the almost universal rule, that a carrier is liable for assaults committed on passengers by its employees whether the assault is in the supposed interest and discharge of a supposed duty to the carrier or was merely that of an individual motivated by conceptions of personal wrong and entirely disconnected with the performance of a duty. 13 C. J. S., Carriers, Section 689, p. 1273, 10 A. J. 263, Restatement of the Law, Agency, 475; Payne v. Moore, 196 Ky. 454, 244 S. W. 869; Louisville & N. R. Co. v. Bennett, 183 Ky. 445, 209 S. W. 358; Illinois Cent. R. Co. v. Winslow, 119 Ky. 877, 84 S. W. 1175; Winnegar's Adm'r v. Central Passenger Ry. Co., 85 Ky. 547, 4 S. W. 237; White v. South Covington & C. St. R. Co., 150 Ky. 681, 150 S. W. 837, 839; Wise v. Covington & C. St. Ry. Co., 91 Ky. 537, 16 S. W. 351.

Clearly, therefore appellee would be liable if the assault on appellant had been committed by its driver before appellant left the bus. Does the mere fact that the assault was committed across the street from the point where appellant alighted from the bus serve to lift the case from the operation of the general rule? We think not.

The liability of a carrier in such cases is based upon its broad duty to protect its passengers from assault. The carrier's obligation is that the contact between passenger and employee brought about by the passenger being placed in the custody of the employee will not result in an unjustified assault upon the passenger. In the case before us the contact between passenger and employee brought about by the carrier-passenger relationship had not been broken at the time of the assault— the bus driver, into whose custody the passenger had been committed had not relinquished the custody thus obtained. He ordered appellant to stand near the steps of the bus for the obvious purpose of conversing with him concerning the complaint appellant had made about the manner in which the bus was being driven and, upon appellant's refusal to abide by his orders, followed appellant across the street and there assaulted him. Thus, since there was a continuation of the employee-passenger contact until the assault was committed, the mere fact

that the assault took place a short distance from the bus, rather than in the bus, does not serve to relieve appellee of liability.

In Wise v. Covington & C. St. Ry. Co., supra, the carrier was held liable where the passenger left the car after being abused by the driver and was pursued and beaten by the driver in the street. It was said that the abuse, the pursuit and the assault must all be regarded as one continuous wrong. The principles thus enunciated were approved in Louisville R. Co. v. Kupper, Ky., 118 S. W. 266, in which the carrier was held liable for a false imprisonment taking place in the street car as the culmination of an assault begun on a street car. No distinction in principle can be drawn between the Wise case and the one under consideration.

It is our conclusion that the evidence was such as to require a submission of the case to the jury.

Reversed with direction to grant the appellant a new trial and for further proceedings consistent with this opinion. Whole court sitting.